IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANIEL ODOM-WOODLIN, on his own behalf and on behalf of his minor children, DARIUS WOODLIN, DANIEL WOODLIN and ALIVIA WOODLIN,**<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF PHILADELPHIA; DETECTIVE VARELA; DETECTIVE ORTIZ, Badge No. 974; POLICE OFFICER BARBIE, Badge No. 4561; POLICE OFFICER FLYNN, Badge No. 5824; POLICE OFFICER IAROSIS, Badge No. 3230; POLICE OFFICER REDANAUER, Badge No. 5833; and POLICE OFFICER SIMPSON, Badge No. 4442,**<br><br>Defendants. | CIVIL ACTION<br><br>No. _____<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

## PRELIMINARY STATEMENT

1.	This is a civil rights action brought under 42 U.S.C. § 1983 and raising supplemental state-law claims concerning the actions of the defendant Philadelphia Police officers on August 28, 2012 in unlawfully entering plaintiffs' home and improperly seizing and using force against plaintiffs in an effort to execute an arrest warrant when the defendants had no basis to believe that the subject of the warrant was present in plaintiffs' home.

2.	The actions of the defendant officers are the result of the failure on the part of defendant City of Philadelphia, with deliberate indifference, to establish appropriate policies and procedures for the execution of arrest warrants and the failure to properly train, supervise or

discipline officers concerning compliance with legally mandated procedures for the execution of arrest warrants.

3. As a result of the defendants' egregious misconduct, plaintiffs suffered physical and emotional harms and damage to their property.

## JURISDICTION

4. This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367(a).

## PARTIES

5. Plaintiff Daniel Odom-Woodlin, age 35, was at all times relevant to this Complaint a resident of Philadelphia, Pennsylvania. He brings this suit on his own behalf and on behalf of minor children, including his son, Darius Woodlin, age 11; his son, Daniel Woodlin, age 9; and his daughter, Alivia Woodlin, age 2.

6. Defendant City of Philadelphia is a municipality in the Commonwealth of Pennsylvania and owns, operates, manages, directs and controls the Philadelphia Police Department, which employs the below defendants.

7. Defendant Detective Varela is and was at all times relevant to this Complaint employed as a Detective in the Philadelphia Police Department's East Detectives Division. He/she is sued in his/her individual capacity.

8. Defendants Detective Ortiz, Badge No. 974; Police Officer Barbie, Badge No. 4561; Police Officer Flynn, Badge No. 5824; Police Officer Iarosis, Badge No. 3230; Police Officer Redanauer, Badge No. 5833; and Police Officer Simpson, Badge No. 4442 are and were at all times relevant to this Complaint employed as Detectives and/or Police Officers in the

Philadelphia Police Department's East Detectives Division Warrant Unit.  They are sued in their individual capacities.

9. At all times relevant to this Complaint, all defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to plaintiffs.

10. At all times relevant to this Complaint, all defendants acted under color of state law.

## FACTUAL ALLEGATIONS

11. Plaintiff Daniel Odom-Woodlin and his wife purchased their home at 6701 North Seventh Street in the East Oak Lane neighborhood of Philadelphia in May of 2007.

12. Mr. Odom-Woodlin and his wife and children have lived in the home without interruption since the time of the purchase and have never transferred any ownership interest to any party.

13. In August 2012, Mr. Odom-Woodlin was the primary caregiver for his and his wife's three children: their sons, Darius and Daniel, who at that time were nine- and eight-years-old respectively, and their daughter, Alivia, who at that time was ten-months-old.

14. Mr. Odom-Woodlin has never before been arrested for any criminal charge.

15. At approximately 8:45 a.m. on August 28, 2012, Mr. Odom-Woodlin was at home with his three children; his two sons were on the first floor of the home while he was sleeping in a second-floor bedroom with his infant daughter.

16. Mr. Odom-Woodlin was awakened by a loud banging noise and his children yelling.

3

17. After hearing the banging noise again, now apparently coming from multiple locations within his house, Mr. Odom-Woodlin walked to the front window and saw a male dressed in all black who forcefully yelled to him that he should open the door.

18. Mr. Odom-Woodlin replied that he did not know the male, and the male yelled while pointing to his right that there was a detective "over there."

19. Mr. Odom-Woodlin did not see any person in the area in which the male had pointed.

20. At that time, Mr. Odom-Woodlin's sons, terrified by the loud banging, came running up to the second floor of the home.

21. Mr. Odom-Woodlin telephoned his sister, who is an officer in the Philadelphia Police Department, to ask for her advice.

22. Mr. Odom-Woodlin's sister directed him to immediately call 911.

23. Mr. Odom-Woodlin did so and asked the dispatcher whether any police officers were present at his home.

24. The dispatcher replied to Mr. Odom-Woodlin that there were no police officers present at his address

25. At that point, Mr. Odom-Woodlin grew extremely fearful that the male who had referenced a detective had done so as part of a ruse to conduct a home-invasion robbery.

26. Mr. Odom-Woodlin contacted his sister again who suggested that he once again call 911 to confirm that no police were present.

27. Mr. Odom-Woodlin did so and was informed, once again, that there were no police present at his home.

28. The dispatcher suggested that Mr. Odom-Woodlin contact the "warrant unit" and, further, asked whether he would like for a marked patrol car to be sent to the location; Mr. Odom-Woodlin said that he would like for a marked patrol car to come to his home.

29. Before Mr. Odom-Woodlin had the opportunity to place a call to the warrant unit at the number provided by the dispatcher, the side door of his home was broken open and men dressed in black entered the home.

30. Mr. Odom-Woodlin, at that point, was standing in his dining room with his infant daughter in his arms.

31. The first man who entered the house drew his gun and pointed it at Mr. Odom-Woodlin and his infant daughter.

32. The man who pulled the gun yelled at Mr. Odom-Woodlin that if he did not put his infant daughter on the floor he would deploy his Taser on him.

33. Mr. Odom-Woodlin placed his daughter on the floor, and the man roughly pushed Mr. Odom-Woodlin up against the refrigerator in the kitchen and placed him in handcuffs.

34. While Mr. Woodlin was being held at gunpoint and then handcuffed, other persons who had entered the home went to the basement and the upper levels of the home to conduct a search.

35. Some of the persons who went to the second floor located Mr. Odom-Woodlin's sons hiding behind a bed; those persons escorted Mr. Odom-Woodlin's sons downstairs.

36. Mr. Odom-Woodlin's sons came downstairs as Mr. Odom-Woodlin was being placed in handcuffs.

37. When Mr. Odom-Woodlin realized that his sons were watching him being handcuffed, he began to cry.

38. After Mr. Odom-Woodlin was handcuffed, defendant Detective Ortiz approached Mr. Odom-Woodlin, identified himself as a police officer and stated that he and the other persons who had entered the house were police.

39. The other persons who entered the house included defendants Barbie, Flynn, Isarosis, Redanauer and Simpson.

40. Defendant Detective Ortiz stated to Mr. Odom-Woodlin that they had an arrest warrant for a man named Walter Williams.

41. The arrest warrant for Walter Williams had been prepared and sworn out by defendant Detective Varela.

42. The arrest warrant prepared and sworn out by defendant Detective Varela contained Mr. Odom-Woodlin's address as a possible home address for Walter Williams.

43. Detective Ortiz showed Mr. Odom-Woodlin a photograph of Walter Williams and Mr. Odom-Woodlin stated that he had never seen the man shown in the photograph before.

44. The police who entered the house, including defendants Ortiz, Barbie, Flynn, Isarosis, Redanauer and Simpson searched the entire property.

45. During the search of the property, Mr. Odom-Woodlin was kept in handcuffs and not permitted to comfort his children who were deeply upset and traumatized by the defendants' actions.

46. After a period of time, the defendants released Mr. Odom-Woodlin from the handcuffs and left the property.

47. In response to Mr. Odom-Woodlin's complaint that the defendants had caused significant damage to the door to his home, the defendants informed Mr. Odom-Woodlin that he could contact the City Solicitor's office to seek compensation for that damage.

48.     Before seeking the arrest warrant for Walter Williams, defendant Detective Varela made no inquiry and conducted no investigation to determine Walter Williams' whereabouts or otherwise obtain current information as to his residence.

49.     Before attempting to execute the arrest warrant for Walter Williams, defendants Ortiz, Barbie, Flynn, Isarosis, Redanauer and Simpson made no inquiry and conducted no investigation to determine Walter Williams' whereabouts or otherwise obtain current information as to his residence.

50.     Defendants Varela, Ortiz, Barbie, Flynn, Isarosis, Redanauer and Simpson had no factual basis to believe that Walter Williams could be found in Mr. Odom-Woodlin's home as Mr. Odom-Woodlin and his family had lived in that home, without interruption, for a five year period before the defendants' entry of the home.

51.     There was no legal cause to justify the entry of plaintiffs' home.

52.     The defendants' actions in handcuffing Mr. Odom-Woodlin and forcing Mr. Odom-Woodlin's children to remain in place while they searched the home constituted a stop and/or arrest of plaintiffs.

53.     There was no legal cause to justify the stop and/or arrest of plaintiffs.

54.     The defendants' actions in pointing a gun and/or Taser at Mr. Odom-Woodlin and his daughter and placing Mr. Odom-Woodlin in handcuffs constituted a use of force against plaintiffs.

55.     There was no legal cause to justify the use of force against plaintiffs, and any force used against plaintiffs was unreasonable and excessive.

56.     Defendant City of Philadelphia was, at the relevant time period, aware that the practices of Philadelphia law enforcement officers in the execution of arrest warrants were likely

to result in constitutional violations.  Based on the litigation of several civil rights matters, including, for example, *April Thompson et al. v. Probation Officer Mark Giordano et al.*, U.S.D.C. E.D. Pa. No. 07-cv-2339, defendant City of Philadelphia was aware that law enforcement officers in Philadelphia routinely fail to confirm that home addresses reported on arrest warrants are accurate at the time they seek to execute arrest warrants.

57. Despite this knowledge, defendant City of Philadelphia has, with deliberate indifference, failed to institute policies, procedures, training, supervision or disciplinary measures that would prevent the unlawful entry of civilians' homes during the execution of arrest warrants.

58. At all times relevant to this Complaint, the conduct of all defendants was in willful, reckless and callous disregard of plaintiffs' rights under federal and state law.

59. As a direct and proximate result of the conduct of all defendants, plaintiffs suffered and continue to suffer damages, including physical and psychological harm, pain and suffering, some or all of which may be permanent, and financial losses.

## CAUSES OF ACTION

### Count I
### Plaintiffs v. Defendants Varela, Ortiz, Barbie, Flynn, Isarosis, Redanauer and Simpson
### Federal Constitutional Claims

60. The actions of defendants Varela, Ortiz, Barbie, Flynn, Isarosis, Redanauer and Simpson violated plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution to due process of law and to be free from unlawful searches and seizures, in that, in particular, defendants caused and/or participated in the unlawful entry of plaintiffs' home, the unlawful detention of plaintiffs, and the unlawful use of force against plaintiffs.

**Count II**
**Plaintiffs v. Defendant City of Philadelphia**
**Federal Constitutional Claims**

61. The violations of plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, plaintiffs' damages, and/or the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of defendant City of Philadelphia, which has encouraged, tolerated, ratified and has been deliberately indifferent to the following policies, patterns, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

   a. Legal cause to enter a home during the execution of an arrest warrant;

   b. Legal cause to stop, detain, and/or arrest a citizen;

   c. Proper procedures for the use and show of force during the entry of a home;

   d. Police officers' duties and responsibilities to engage in proper investigative techniques;

   e. The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;

   f. The hiring and retention of officers who are unqualified for their employment position; and

   g. The failure to properly sanction or discipline officers who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other Philadelphia police officers.

## Count III
### Plaintiffs v. Defendants Varela, Ortiz, Barbie, Flynn, Isarosis, Redanauer and Simpson
### State Law Claims

62. The actions of defendants Varela, Ortiz, Barbie, Flynn, Isarosis, Redanauer and Simpson constituted the torts of assault, battery, false arrest, and false imprisonment under the laws of the Commonwealth of Pennsylvania.

**Wherefore**, plaintiffs respectfully request:

A. Compensatory damages as to all defendants;

B. Punitive damages as to defendants Varela, Ortiz, Barbie, Flynn, Isarosis, Redanauer and Simpson;

C. Reasonable attorneys' fees and costs as to all defendants;

D. Such other and further relief as may appear just and appropriate.

Plaintiffs hereby demand a jury trial.

Jonathan H. Feinberg
I.D. No. 88227
KAIRYS, RUDOVSKY, MESSING & FEINBERG LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
215-925-4400
215-925-5365 (fax)
jfeinberg@krlawphila.com

*Counsel for Plaintiffs*